WILLIAM A. MATNEY, Deceased, and ESTELLA MATNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matney v. Commissioner
Docket No. 4475-69.
United States Tax Court
T.C. Memo 1974-90; 1974 Tax Ct. Memo LEXIS 228; 33 T.C.M. (CCH) 455; T.C.M. (RIA) 74090; April 15, 1974, Filed. William A. Matney, pro se. Robert A. Roberts, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent has determined deficiencies in the petitioners' Federal income tax for the taxable years 1964 and 1966 in the amounts of $957.43 and $6,088.06, respectively. Respondent has also asserted additions to tax for the taxable year 1966 pursuant to section 6653(a) [1] in the amount of $304.40. Due to certain concessions by the parties, the only issues remaining for our decision relate to the following: (1) The fair market value of certain property received by the decedent in April 1966 as partial downpayment *229 on a contract for the sale of his farm and subsequently retained upon default of the purchaser. (2) The fair market value of certain stock received by the decedent in December 1966 in partial satisfaction of the purchase price upon a subsequent sale of the farm. FINDINGS OF FACT Some of the facts are stipulated. Such stipulations and the exhibits attached thereto are incorporated herein by reference. Petitioners, William A. Matney, deceased, and Estella Matney, were husband and wife at all times pertinent herein. On March 25, 1972, William A. Matney was killed attempting to resist a robbery to a used car lot which he operated. No executor or executrix for his estate has ever been appointed. At the time of the filing of the petition herein, petitioners' legal residence was Louisville, Kentucky. They filed joint Federal income tax returns for the taxable years 1964 and 1966 with the district director of internal revenue, Louisville, Kentucky. [2]
During the years in question, decedent was engaged in the operation of a dairy farm *230 located in Washington County, Indiana, as well as of a used car lot located in Louisville. On April 15, 1966, decedent entered into a contract with Hatzel McKim to sell his farm. As partial downpayment thereon, petitioner received title to a parcel of realty located at 2205 St. Louis Avenue, Louisville, Kentucky. Decedent retained title to this property upon McKim's subsequent default on the contract. Decedent leased out the property in both 1967 and 1968. In September 1967, Earl E. Brown, a Louisville realtor, was asked by decedent to appraise the property. He estimated its worth to be $4,500, describing the property as run down and in very poor condition. He also indicated that the property was located in an area subject to rapid deterioration due to widespread prevalence of vandalism. Decedent did not report the receipt of such property in income on his 1966 joint income tax return or in any subsequent return. On his income tax returns for 1967 and 1968, decedent claimed a depreciation allowance on such property predicated on an adjusted basis of $10,000. The necessity of including such property in decedent's gross income for 1966 is not in question. The sole dispute *231 concerns the fair market value at which such property should be includable. In his notice of deficiency, respondent asserted the property had a value of $11,000. Petitioners contend that the property should be valued at $4,500. In September of 1966, decedent entered into a second contract for the sale of his farm, this time with one Claude E. Knoy. In satisfaction of an agreed purchase price of $56,000, decedent received at the closing, held on or about December 10, 1966, $50,000 in cash and 2,000 shares of stock of American Business Corp. (hereinafter referred to as "American"), valued by the parties at $3 per share. The decedent paid the realtors who arranged the sale a sales commission of $1,000 cash and 600 shares of American stock, at an agreed value of $3 per share. At various times that December, decedent attempted to obtain loans based on the American stock but was unsuccessful. Decedent never received any dividends on the stock. A petition was filed in August of 1968 for the appointment of a receiver for American. In October of 1968, a receiver was duly appointed. On his 1966 return, decedent reported $56,000 as the gross sales price for the sale of his farm. *232 At the trial, he contended, however, that such amount should be reduced to $50,000, since the stock of American received pursuant to the sale was worthless at the time of receipt.
OPINION The first issue for decision concerns the value at which the parcel of realty which decedent received in April 1966 from Hatzel McKim as partial downpayment on a contract for the sale of his farm and subsequently retained after McKim defaulted on the contract is includable in decedent's income for 1966. The necessity of including such property in income is not in question. Respondent has determined that the property is includable at a value of $11,000. Decedent, who at no point ever reported the receipt of such property in income, contended that the value of the property was not more than $4,500. The burden of proof is upon decedent to overcome the presumption of correctness attached to respondent's determination. . In attempting to meet this burden, decedent introduced the testimony of a realtor whom he had asked to inspect and appraise the property in the fall of 1967. The realtor appraised the property as having a value of $4,500, describing *233 the property as run down and in very poor condition. The Court finds no basis for questioning this appraisal. Since, however, the property was in an area subject to rapid deterioration, we must also make allowance for the lapse of time since decedent's acquisition of the property. In the light of such facts, we find that the property in question should be includable in the gross income of decedent at a value of $6,000. The remaining issue for determination concerns the fair market value of $2,000 shares of American stock which decedent received in December of 1966 from Claude E. Knoy in partial satisfaction of the agreed purchase price of $56,000 for the sale of his farm. Decedent also received $50,000 in cash on the sale. On his 1966 income tax return, decedent valued the stock at $3 per share for purposes of reporting the amount received on the sale. At the trial decedent contended the stock he received was actually worthless, thereby causing the gain reported on the transaction to be overstated by $6,000. The position of respondent is that the stock had a value of $3 per share as initially reported by decedent. The decedent had the burden of showing that the stock he *234 received in December of 1966 was in fact worthless. The question is necessarily one of fact. Decedent emphasized the fact that American went into receivership in the fall of 1968. This fact, however, has no bearing on the value of the stock some 20 months earlier. It is the value of the stock at the time of receipt about which we are concerned for purposes of determining the amount received under section 1001(b). One of decedent's witnesses testified that she received some American stock in August of 1966 on the sale of her farm but the next month found it to be worthless. She failed, however, to explain the basis upon which she reached such a conclusion. Accordingly, such testimony represents mere opinion only, totally unsubstantiated, which this Court is unwilling to accept. Decedent testified that he attempted to obtain loans on several occasions that December but was unsuccessful. Such fact of itself does not indicate that the stock was worthless. See , affd. (C.A. 9, 1930). While it may well reflect the fact that the stock might have had a value of *235 less than $3, it was incumbent upon decedent to show such lesser value and this he failed to do. Indeed, decedent has introduced no evidence as to the financial condition of American during the year in question. He did not even submit the corporation's financial statement for 1966 which would reflect its earnings or losses and from which at least the book value of the stock, if any, could be determined. It appears to us that the most telling piece of evidence as to the value of the stock is the value given it by the parties themselves in an arm's length transaction, that being $3 per share. This is more persuasive evidence of its value than decedent's hindsight judgment which must necessarily reflect the fact that the corporation subsequently failed. See . The same value of $3 was assigned to the stock when decedent used 600 shares thereof to satisfy part of the sales commission due the realtors on the sale. In accordance with the above, we find that decedent has failed to show that the American stock he received in December of 1966 was either worthless or had a fair market value of less than the $3 per share at which he *236 initially valued it and with which respondent now concurs. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Estella Matney is a petitioner herein only by virtue of her having filed a joint return with her husband for the years in question. ↩